### DRIGGS v. DEAN et al.

(Supreme Court, Appellate Division, First Department.    March 6, 1896.)

WAREHOUSEMEN — TRANSFEREE OF WAREHOUSE RECEIPTS — LIABILITY FOR STORAGE.

In an action for storage against transferees of warehouse receipts, it appeared that such receipts showed on their face what the storage would be, and that defendants claimed to be the owners of the goods, and, as such, demanded damages of plaintiff because of improper storage. *Held*, that defendants were liable for storage which accrued before as well as after the transfer of the receipts. Ingraham, J., dissenting.

Appeal from circuit court, New York county.

Action by Marshall S. Driggs against Robert J. Dean and another. There was a verdict for defendants, and from an order granting a motion made on the minutes to vacate the same, and direct a new trial, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, O'BRIEN, and INGRAHAM, JJ.

L. E. Warren, for appellants.
John Berry, for respondent.

VAN BRUNT, P. J. The plaintiff in this action sues to recover for the storage of a large number of barrels of cement. The answer was a general denial; and upon the trial the case was submitted to the jury, and the jury rendered a verdict in favor of the defendants, and the court thereupon, on the plaintiff's motion, directed a new trial. There is no dispute as to the facts, and the only question is whether, upon the facts, any liability of the defendants for this storage was established. In March, 1885, the plaintiff was a public warehouseman, doing business in the city of New York. On the 28th of said month, one Von Angern, the owner of a large number of barrels of cement, placed the same in plaintiff's warehouse upon storage, agreeing to pay at the rate of four cents a barrel per month, and taking two warehouse receipts therefor.

On these receipts were indorsed conditions upon which the goods were held on storage, in accordance with the provisions of chapter 326 of the Laws of 1858 that the receipts might be transferred by indorsement thereof, and that the person to whom they were so transferred should be deemed and taken to be the owner of the goods therein specified, so far as to give validity to any pledge or transfer made or created. In July, 1885, Von Angern made his promissory note for $3,500, payable to the Chemical National Bank, three months after date, and pledged to said bank, as security for the payment of said note, the said two warehouse receipts. Upon this note the defendants indorsed their guaranty of payment upon transfer to them of said note, and of the right and title of said bank in and to the collateral securities specified or referred to therein, if requested at the time of such payment. Von Angern failed to pay the note at maturity, and the bank called upon the defendants to pay it, which they did, and the bank transferred and delivered to them the note and the warehouse receipts, with the indorsement thereon. Subsequently, and in October, 1885, the said warehouse receipts were presented to the plaintiff by one of the defendants, named Wills, he at the time making the remark, "Well, I suppose we're stuck," and stating that he wished to examine the goods, which he did. At this time the plaintiff's bookkeeper asked the defendant Wills whether he should make out bills for the accrued storage, to which Wills replied: "Yes, you had better." The bills were accordingly made out, and given to Wills by the plaintiff's bookkeeper, Wills swearing that they were made out to Von Angern. Subsequent to this time, the defendants offered to sell the goods, and the plaintiff, under their authority, allowed the same to be examined. On the 16th of January, 1886, the defendants sued the plaintiff upon the allegation that the merchandise represented by the warehouse receipts issued by him to Von Angern, of which they had become the owners by reason of the transactions above stated, were not barrels of cement, as described in said warehouse receipts, and were not of materials that could be used as cement, and further alleging, on information and belief, that Driggs had so carelessly and negligently cared for and stored the merchandise covered by said receipts as to cause the same to be worthless and without intrinsic value; and that the defendants, by reason of such carelessness, had suffered damage to the amount of $3,500, with interest. The plaintiff in this suit (the defendant in the action last above mentioned) answered, and, after various vicissitudes, it was finally determined that the defendants in this action had no cause of action against the plaintiff by reason of the matters set forth in their said complaint. The merchandise covered by the receipts having remained on storage during all this time, and storage having accumulated thereon, this action was brought against the defendants as owners to recover the amount of such storage. Upon the first trial of the action, the complaint was dismissed at the close of the plaintiff's case. This was reversed by the general term (34 N. Y. Supp. 342), and upon the retrial the jury rendered a verdict in favor of the defendants, which was set

aside by the trial judge upon motion, and from the order thereupon entered this appeal is taken.

It was claimed upon the argument of this case that there were some misapprehensions of fact by the general term, and that differences exist between the case as now presented and as it was presented to the general term. We do not see, upon an examination of the evidence, that there was any mistake or misapprehension upon the part of the general term in regard to the facts of the case. The evidence discloses that the defendants were insisting upon their rights as the owners of this merchandise. They knew that it had been stored; and I think we may take judicial notice of the fact that the storage business is not conducted for pleasure, but for profit. It appeared upon their muniments of title that a certain rate of storage was to be paid upon these goods; and they knew that the warehouseman would be entitled to look to somebody for the payment of these storage charges. The defendants held the receipts, claimed to be the owners of the goods, demanded damages against the plaintiff, upon the ground that they were the owners of the goods, and the plaintiff was bound to hold the goods subject to the presentation of the warehouse receipts of which the defendants were the owners. It appeared upon the face of these receipts what the storage would be; and if the defendants succeeded to the rights of Von Angern, as owner of the goods, it is difficult to see why they did not also succeed to his obligations to pay the storage called for by these receipts, from the time they became owners thereof. It is a familiar principle in respect to landlords and tenants that, where a lease is assigned, the assignee is liable to the landlord for the rent prescribed in the lease as long as he remains the assignee and holder of the lease. He may terminate that obligation by assigning the lease, even to an insolvent person. Smith, Landl. & Ten. 294. So, in the case at bar, the defendants became the owners of these warehouse receipts, upon the face of which was a promise to pay storage at a certain rate; and as long as they held these receipts, and claimed the ownership thereof, and of the merchandise therein represented, I am unable to see why they were not under an obligation to pay the storage incurred under the contract entered into by their assignor. These goods were being held by the plaintiff for the benefit of the defendants; and if there was no express contract, he keeping them there on storage, virtually at the defendants' request, because they held the warehouse receipts and had a right to demand the possession of the goods, an implied contract to pay the storage would, under such circumstances, necessarily arise. It was not disputed that the rate of storage charged was reasonable; and it would seem therefore, certainly for the time in which these goods were stored and the defendants were the owners of the same, that the plaintiff would have the right to look to them for compensation for the service which he was rendering to them.

The order appealed from should be affirmed, with costs.

WILLIAMS and O'BRIEN, JJ., concur.

INGRAHAM, J. (dissenting).  When this case was first tried, the complaint was dismissed, upon the plaintiff's evidence.   Upon appeal to the general term, the judgment entered upon such dismissal was reversed.   It was held that the transfer of the warehouse receipts by indorsements and delivery vested in these defendants the legal title and right of possession.   This proposition of law having been established on the appeal, it must be taken to be the law of this case. The court also held that, upon the evidence then before the court, the defendants had taken possession of the merchandise pledged on October 24, 1885, at which time they requested that the bills for past storage should be made out;  that a contract for subsequent storage was thereby implied;  and it was therefore held that it was error to dismiss the complaint.   See 87 Hun, 325, 34 N. Y. Supp. 342. , Upon the new trial there ordered, the defendants introduced evidence materially contradicting that upon which the court had decided the appeal, and the court, upon the whole evidence, submitted the question to the jury as to whether or not the defendants did take possession of these goods.   The court, in its charge, told the jury that, in taking up the notes and paying the amount thereof, the defendants took this collateral security, and they became possessed of these warehouse receipts, the possession of which would vest in them, if they chose so to regard it, the title of the property, and that thereupon they would have the right to demand from Driggs, the warehouseman, the actual possession of the property;  that:

"If Dean & Co. stopped there, and never put themselves in privity in any way with Driggs, if they never went to Driggs and demanded possession of the goods, or did anything with them to indicate the exercise of any ownership or control of that property, then Driggs could not hold Dean & Co. for any storage accruing after the 24th day of October. Something must have been done on the part of Dean & Co. to indicate that they would take possession of the goods, that they would control them, that they would hold them, that they would exercise the right which they were entitled to, because up to that time there was no privity existing between them. * * * Now, if they did that, if they exercised those acts of ownership, if they did anything which induced Driggs to continue the storage of those barrels on the account of Dean & Co., then Dean & Co. would become responsible for that storage for as long as the article remained there."

And then, after calling the attention of the jury to the facts as testified to by the witnesses for the respective parties, the court said:

"There is no express promise proven in this case on the part of Dean & Co. to pay any storage, and the right of recovery would depend on there being a contract to be implied from the facts that I have suggested, and from the situation that I have outlined; and if you find that Dean & Co. did take possession of those goods, did exercise acts of dominion over them as owners, did keep Driggs in the position in which he claims to have stood, namely, that of retaining those goods in his storehouse during all these years, relying upon what was done by Dean & Co., then there would be a basis from which you could imply a contract; and, if you find the contrary, the defendants would be entitled to a verdict."

Counsel for the plaintiff then asked the court to charge the jury that the transfer of these warehouse receipts to Dean & Co., by indorsement and delivery, vested in them the legal title and the right of possession;  and that the court charged.   The jury having found a verdict for the defendants, the court was not justified in disturbing that

verdict if it was fairly sustained by the evidence, unless there was error in the rule of law laid down by the court in submitting the question of fact to the jury.

It appears from the evidence that one Von Angern stored with the plaintiff on March 28, 1885, certain barrels of what purported to be Portland cement, and on July 21, 1885, made a promissory note, whereby he promised to pay to the Chemical National Bank $3,500, and deposited with the bank, as collateral security, warehouse receipts issued by the plaintiff representing the 2,250 barrels of Portland cement deposited with them as aforesaid; and the defendants guarantied the payment of the note upon the transfer to them of the said note, and the right, title, and interest of the bank in and to the collateral security specified or referred to therein.     When the note became due, Von Angern had disappeared, whereupon the defendants paid the face of the note to the bank, and received from it the note and the warehouse receipts deposited with the bank.     After the defendants thus became possessed of the warehouse receipts, properly indorsed by Von Angern, one of the defendants sent a broker to examine these goods, and he himself examined them.     They also made an offer to sell them, and gave an order to proposed purchasers to examine the goods in the plaintiff's warehouse.     At the time of the defendant's visit to examine the goods, he told the plaintiff that he could not find Von Angern; that defendants held the warehouse receipts representing that amount of cement, and asked to see it; and he then examined the cement.     He told the plaintiff that he held the receipts as collateral security for a loan.     The plaintiff then gave him bills made out to Von Angern for the storage due up to that time.     The defendant did not ask for the bills, but they were handed to him by the plaintiff.     It also appeared that in January, 1886, the defendants commenced an action against the plaintiff, in which they alleged the delivery of the two warehouse receipts by the defendant to Von Angern, calling for 2,463 barrels of Portland cement; the loan by the Chemical National Bank to Von Angern, with deposit of warehouse receipts as security; and the guaranty of that loan by the plaintiff, and the payment thereof, and the receipt by the plaintiff of such warehouse receipts from the Chemical Bank, with notice thereof to Driggs, and an examination of the goods held by Driggs; that the goods so held by Driggs were not Portland cement; that the defendant did carelessly and negligently care for and store the said merchandise covered by the said warehouse receipts in such manner, and by his fault, as to have caused the same to be worthless, and thereby caused the plaintiff to suffer loss and damage to a sum equal to the $3,500, with interest.     That action was ultimately determined in favor of Driggs, and against these defendants.     This is a statement of the facts as testified to by the defendants; and, the jury having found for the defendants, we must assume them to have been established.

The plaintiff seeks to sustain the order of the court setting aside the verdict, on the ground that, assuming these facts to be true, the plaintiff was entitled to the direction of a verdict in his favor, and that is the question argued and which we have to determine.     The decision of the court on the former appeal to the general term that the de-

fendants took possession of the goods on October 24, 1885, having ordered bills to be made out for past storage, seems to have been based upon the existence of that fact. It now appears that the defendants did not order the bills to be made out, but simply received the bill to Von Angern for the storage up to that time. It was necessary that the defendants should know how much was due in order to determine whether they would take possession. The question, then, presented to us, which we must determine, is whether or not the finding of the jury that the defendants did not take possession of the goods was without evidence to support it, and whether the failure of the defendants to take possession was fatal to the plaintiff's right of recovery.

As before stated, the court, on the trial, stated that the right to recover must depend upon a contract, express or implied, and that, unless the jury find that the defendants did take possession of the goods, no contract could be implied. I do not understand that the respondent disputes the proposition that there must be a contract between the plaintiff and the defendants whereby the defendants agree to pay this storage, either express or implied. But it is claimed here that, upon the evidence most favorable to the defendants, the defendants did assume the constructive possession, and did assert their right to the actual possession, and thus assumed ownership on the 24th of October, and that therefrom the law will imply an agreement to pay the storage. I do not consider it very material to determine just what title vested in the defendants upon the transfer to them of the warehouse receipts. It is conceded that the title to the goods represented by the warehouse receipts passed to them by the payment of the loan made by the bank, and the delivery of the warehouse receipts, and that they had a right to the possession of the goods, a right to sell them, and apply the proceeds to the payment of the amount that they had paid to the bank. And I think it clear that, had the defendants actually taken such possession, exercised any visible acts of ownership over them, such as having them transferred to their own name, surrendering the receipts, and taking out new ones, or any other act that indicated an intention of assuming the actual possession and legal title to which they were entitled, such an act would be, in substance, a redepositing of the goods with the warehouseman, and upon that a contract would be implied to pay the storage charges. But it seems to me equally clear that the mere fact of the vesting of the title in the defendants, as security for the repayment of a loan of money, or the vesting of the right to take possession in the defendants, without some act of theirs which brought them into actual contractual relationship with the plaintiff, would not imply an agreement to pay the charges. It is the actual possession, as distinguished from the right of possession or legal title, from which the inference of a contract arises. Prior to the time the defendants did actually take possession of the goods, their rights were fixed by the factor's act (Laws 1858, c. 326, § 6), which provides that such warehouse receipts may be transferred by indorsement thereof, "and any person to whom the same may be

so transferred shall be deemed and taken to be the owner of the goods and merchandise therein specified, so far as to give validity to any pledge, lien or transfer made or created by such person or persons." Thus, the defendants were the owners so far as to enable them to sell and transfer a good title to this cement. They, however, made no sale of it, and it seems to me clear that their liability must depend upon the fact whether or not they did take such actual possession of the goods as to create a contractual relation between themselves and Driggs. Did they take such possession? I think it clear that, assuming the facts sworn to by the defendants are true, no such possession was ever taken. Under the statute, as before stated, they had the right to sell the goods without taking possession. They were deemed and taken to be the owners of the cement so far as it gave validity to any transfer made by them. And for that purpose, and without taking the actual possession, they had a right to examine the cement, and to send persons to whom they offered it for sale to examine it. There is nothing in this attempt to sell to establish conclusively that they were in possession, as, under the statute, they had a right to make such a sale without taking pos session. Assuming that they had, the day after they received these warehouse receipts, sold this cement to one of the persons whom they had sent to examine it, and transferred to him the warehouse receipts, could it be said that these defendants would have continued liable for the storage during the time that such vendee had allowed it to continue? I think clearly not. Was the Chemical Bank liable to this plaintiff for the storage of this cement? It had taken these warehouse receipts as collateral security, had transferred them to the defendants, had exercised the same acts of ownership over the cement as did the defendants, with the exception of the examination that the defendants made of it, and the fact that they sent persons to whom they had offered the cement for sale to examine it. But as they had a right to sell under the statute and give a good title, and as they had a right themselves to examine the cement, to ascertain whether or not it was there, I do not think that either of those acts was sufficient to establish conclusively the fact of possession. The plaintiff was at all times protected. He could at any time have called upon those interested in the cement to pay the charges, or have sold the cement in default of such payment; and there is nothing to show that he was justified in any way in relying upon the responsibility of the defendants for the charges, or that the defendants did any act to justify him in assuming that they would be responsible. The action brought by the defendants against the plaintiff on the warehouse receipts was an express disaffirmance of their having taken possession of the cement. The foundation of that action was a representation that the plaintiff had made in his warehouse receipts that he had received Portland cement, and that the defendants, relying upon the said warehouse receipts, guarantied the payment of the note to the Chem-

ical Bank, and were thus compelled to pay the same; that they had demanded an inspection of the cement covered by the receipts, but that the cement stated by the plaintiff at the time of the examination and inspection to be the goods covered by said receipts was not Portland cement, and was worth less than the amount that the plaintiff claimed as storage for the cement, which was a lien upon the cement, and therefore defendants suffered damage to the amount that they had been compelled to pay to the bank. This was, if anything, a disaffirmance of the right to the possession of the cement, and an allegation that such right would be valueless, as the defendants claimed a lien upon it for storage in excess of its value.

I think it clear, therefore, that a question was presented for the jury to determine whether or not the defendants did take actual possession of the cement on the 24th of October, 1885, or subsequent thereto, by which an implied contract to pay would be inferred; and that, the jury having found that no such possession was taken, no contract could be inferred, and the defendants were not liable. As before stated, the respondent does not claim that such a contract could be implied in the absence of some act of the defendants by which they could take possession of the cement.

It has been suggested that there is an analogy between this case and the case of an assignee of a lease where such assignee becomes liable for rent; but such liability only exists where the assignee of the lease has entered into possession of the demised premises, and it exists only so long as he continues in such actual possession, receiving the rents and profits thereof. See Damainville v. Mann, 32 N. Y. 206, where, upon a review of all the cases, it was held that possession of the demised premises is necessary before an obligation to pay the rent or any part of it arises. And, to show how material the possession of the demised premises is, in that case it was held that the assignee of an undivided interest of the lessee, who was in possession of the premises, and received all of the rents and profits, was liable for the whole rent, and the lessee of the other portion, who received no part of the rents, was not liable for any of the rent, the court saying:

"While the assignee in possession has all that is useful or beneficial issuing out of the lands, he should, upon the most obvious principles of justice, be required to pay the rent reserved as the condition of his enjoyment."

And it has been expressly held that a mortgagee of a lease, although in possession, is not liable for the rent reserved by the lease.

I think the jury were justified from the evidence in finding that the defendants did not take possession of the property, and did not exercise any acts of ownership over it, and that, upon those facts being found, no contract, express or implied, existed whereby the defendants were individually bound to pay the storage; and, upon the verdict of the jury, the defendants were entitled to judgment, and therefore the order granting a new trial should be reversed, with costs.